# CASOS RESUELTOS

# CORTE SUPREMA DE PUERTO RICO

APARICIO HERMANOS, DEMANDANTES Y APELADOS, *v.* H. C. CHRIS-
TIANSON & CO., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en
procedimientos de apertura de rebeldía en pleito sobre
rescisión de daños y perjuicios.

No. 1524.—Resuelto en marzo 16, 1917.

TRANSCRIPCIÓN DE AUTOS—ABOGADOS—COMPARECENCIA POR ABOGADOS—FALTA DE
AUTORIZACIÓN—ASEGURAMIENTO DE SENTENCIA.—Cuando se apela de una reso-
lución denegando una moción sobre nulidad de sentencia y cancelación de
fianza para levantar un embargo hecho sobre bienes del demandado en ase-
guramiento de la sentencia, alegándose que una comparecencia hecha en
dicho procedimiento por un abogado a nombre del demandado lo fué sin
autorización expresa o tácita de éste, la transcripción de autos debe con-
tener copia del legajo de la sentencia y también de dichos procedimientos,.
para que el tribunal pueda conocer la forma en que se hizo la comparecen-
cia que se impugna.

CONOCIMIENTO JUDICIAL—AUTOS DE OTRAS APELACIONES—IMPEDIMENTO O ESTOP-
PEL.—Generalmente las cortes de apelación no tomarán conocimiento judicial
de sus propios autos a menos que exista algo que pueda tener el carácter
de un impedimento (*estoppel*) para la persona que desea aprovecharse de
lo que no aparece de los autos con el objeto de alegar cuestiones que a las
cortes consta son de otro modo, pero no tomarán tal conocimiento judicial
únicamente para suplir deficiencias de los autos.

ID.—LEY DEL CASO.—Las cortes de apelación tomarán conocimiento judicial de
cuestiones que han sido resueltas en una apelación anterior en el mismo
caso para evitar que sean alegadas nuevamente por una parte.

ID.—LEY DEL CASO—TEORÍA Y HECHOS DISTINTOS.—Cuando los hechos presentados
a la corte inferior y la teoría del apelante son distintos de los de un caso
anterior, éste no constituye la ley del caso y el apelante debe someter a
la corte de apelación los autos como fueron considerados por la inferior.

ABOGADOS—COMPARECENCIA POR ABOGADO—RATIFICACIÓN DE SUS ACTOS.—Cuando
un demandado, después de haber un presunto agente suyo empleado los ser-
vicios de un abogado para solicitar el levantamiento de un embargo sobre
bienes de que es dueño, permite, al tener conocimiento de ello, que conti-
núen los procedimientos sin proceder en forma alguna, tal hecho constituye
una ratificación de los actos del abogado.

1

ID.—PRESUNCIÓN DE REPRESENTACIÓN.—La presunción de que un abogado está autorizado para representar a una persona, no puede ser negada fácilmente, y sus actos son susceptibles de fácil ratificación. Es un principio en favor de todo el foro. Esta presunción descansa sobre la base del procedimiento de la corte, pues de otro modo a cada paso tendría que detenerse e interrogar a los abogados en cuanto a su representación.

ID.—CUASI-CONTRATOS.—Los hechos de este caso han sido considerados como cuasi-contrato conforme a los artículos 1789, 1790, 1792, 1793 y 1794 del Código Civil.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. R. Martínez Nadal* y *Oscar B. Frazer.*

Abogado de los apelados: *Sr. José Tous Soto.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La mercantil apelante presentó en la Corte de Distrito de Ponce una moción para anular la sentencia dictada contra ella y cancelar una fianza. Alega la moción entre otros particulares, que la apelante es una sociedad organizada bajo las leyes del Estado de New York, con domicilio en New York, y no tiene ningún socio ni agente autorizado en Puerto Rico para comparecer por ella en ningún concepto ante los tribunales de justicia de Puerto Rico. Que Calvin Dietrich es sólo un agente comisionista de la mercantil apelante, que dicho Dietrich no es socio ni interesado en forma alguna en la mercantil demandada, no tenía autorización implícita, ni se le había dado expresa o tácitamente facultad o autorización para comparecer por ella en ningún pleito como demandante, ni tampoco para aceptar emplazamientos o recibir servicios de procedimientos como demandada, y que sus poderes están limitados única y exclusivamente a concertar ventas en Puerto Rico, las cuales habían de ser previamente confirmadas por la apelante; que dicha mercantil demandada jamás ha autorizado al abogado Frank Antonsanti para comparecer por ella en este caso, en ninguna comparecencia general o especial, para pedir la nulidad de ningún procedimiento incidental de este pleito; que la mercantil demandada no ha recibido ningún servicio, emplazamiento, noticia o dili-

gencia de los procedimientos de este caso en la Corte de Distrito de Ponce; que la Corte de Distrito de Ponce nunca adquirió jurisdicción sobre la apelante (alegando algunas razones); que la apelante ofrece a la demandante una garantía que se estime suficiente para el cumplimiento de cualquier sentencia que recaiga en este caso, cancelándose entonces la fianza prestada a favor de la demandante por Segundo Cadierno y Manuel Gómez de San Juan; que la apelante tiene una buena y suficiente defensa para obtener éxito contra la acción entablada por la demandante, por lo que la apelante suplica a la corte que, de acuerdo con el artículo 104 del Código de Enjuiciamiento Civil, y para el mejor servicio de la justicia, que declare con lugar esta moción y permita a la mercantil demandada, ahora apelante, introducir su contestación a la demanda, previa garantía suficiente para la demandante, y ordene la cancelación de la fianza prestada por Segundo Cadierno y Manuel Gómez con objeto de asegurar la efectividad de la sentencia que recaiga en este caso. La moción que antecede está suscrita y jurada por R. Martínez Nadal, abogado, que jura ciertos hechos de propio conocimiento incluyendo, cosa que nos parece algo rara, el hecho relativo a las relaciones que existen entre Calvin Dietrich y la sociedad apelante. El hecho octavo en el cual la apelante niega la facultad de Frank Antonsanti para comparecer a su nombre se jura por información y creencia.

Acompaña a la moción un *affidavit* de William G. McNaughton. En este *affidavit* se alega que McNaughton es uno de los miembros de la sociedad H. C. Christianson & Co., y que está perfectamente familiarizado con todos los negocios de esa sociedad; que dicha sociedad no ha sido notificada, ni ha recibido ningún emplazamiento o diligencia en el caso arriba expresado; que la referida sociedad no tiene funcionarios, empleados o agentes en la Isla de Puerto Rico, y que todas las mercancías que vende dicha firma de H. C. Christianson & Co. en la Isla de Puerto Rico son vendidas por ella a comerciantes comisionistas que no son agentes de

la sociedad; que la indicada sociedad de H. C. Christianson & Co. jamás ha autorizado a ninguna persona en Puerto Rico para comparecer en su nombre en ningún pleito o pleitos en ninguna corte de Puerto Rico, con excepción únicamente de que ha autorizado debidamente a la sociedad profesional Rounds, Hatch, Dillingham & Debevoise para comparecer a su nombre y representación con el objeto de solicitar que sea dejada sin efecto la sentencia dictada en el caso arriba expresado y la sentencia dictada en las otras acciones. Que la dicha sociedad mercantil no autorizó a Frank Antonsanti para comparecer a su nombre o en su representación en el caso arriba expresado, ya en la corte arriba mencionada o en el Tribunal Supremo de Puerto Rico para ningún fin; que dicha firma no autorizó a Francis E. Neagle para comparecer a su nombre o representación en el caso arriba indicado en la Corte Suprema de Puerto Rico; que la dicha sociedad jamás ha autorizado a Calvin Dietrich para comparecer a su nombre o en su representación en ninguna acción o acciones en corte alguna de la Isla de Puerto Rico, ni en el caso arriba expresado; que dicha mercantil nunca ha autorizado a dicho Calvin Dietrich para contratar o emplear ningún abogado o abogados en su nombre o representación en la Isla de Puerto Rico, ni jamás ha dado facultad la referida firma al mencionado Calvin Dietrich para autorizar a ningún abogado u abogados a que comparezca por ella o en su nombre en ningún pleito o pleitos ante ninguna corte de Puerto Rico, incluyendo la presente acción, o que cualquier comparecencia a nombre y representación de la expresada sociedad H. C. Christianson & Co., en cualquier pleito o pleitos ante cualquier corte de la Isla de Puerto Rico, o en la acción arriba expresada, hecha por dicho Calvin Dietrich o Frank Antonsanti, o cualquier otra persona, se hizo enteramente sin conocimiento o permiso de la referida sociedad y fué completamente sin autoridad, e ilegal; y que semejante comparecencia no ha sido ratificada jamás por la expresada sociedad mercantil. Sigue después un *affidavit* de Calvin Dietrich del

mismo tenor general, en el que además se hace referencia a algunos de los actos ejecutados por Frank Antonsanti, el curso de las operaciones de H. C. Christianson & Co. y otros particulares que en unión del *affidavit* en general discutiremos más adelante en esta opinión.  Se acompaña una carta como comprobante (*exhibit*) al *affidavit* de Dietrich, la cual es como sigue:

"NOVIEMBRE 26, 1915.

"SR. FRANK ANTONSANTI,
 "*Edificio del Banco Royal,*
  "*San Juan, P. R.*

"MUY SEÑOR MÍO: Su carta de 19 del corriente ha sido recibida pero en contestación deseamos manifestarle que no tenemos que ver nada absolutamente con este asunto.  Nosotros no autorizamos a ningún abogado por nuestra cuenta en Puerto Rico, y si el Sr. Dietrich ha hecho semejante arreglo con Ud., lo hizo por su cuenta y no por nosotros.  Por consiguiente rehusamos tomar en consideración ninguna reclamación por servicios prestados por no haber sido autorizados por nosotros.  Si Ud. ha hecho cualquier contrato con el Sr. Dietrich es a él a quien debe acudir en cobro de sus honorarios.

 "De Ud. con toda consideración,
   (Firmado)  "H. C. CHRISTIANSON & Co."

Además de la moción, de los dos *affidavits* y de la carta que se transcribe, los autos también contienen un escrito de oposición a la moción, un *affidavit* de Frank Antonsanti que acompaña a dicha moción, la moción que fué presentada anteriormente por la apelante representada por el abogado Frank Antonsanti solicitando se dejara sin efecto la sentencia;  el *affidavit* en que se basa la moción, las resoluciones de la corte inferior resolviendo ambas mociones;  la sentencia de este tribunal confirmando la primera resolución de la corte inferior negándose a dejar sin efecto la sentencia;  el escrito de apelación interpuesta en el caso, y la certificación de los abogados respecto a la transcripción de autos.  El *affidavit* de Frank Antonsanti es como sigue:

"Yo, Frank Antonsanti, debidamente juramentado declaro: que fuí requerido por Calvin Dietrich, de San Juan, para que compa-

reciera en el presente caso y obtuviera el levantamiento del embargo trabado sobre cierto azúcar propiedad de H. C. Christianson, de New York, mediante la presentación de fianza; que Calvin Dietrich me manifestó al requerir mis servicios en favor de H. C. Christianson, que él era el agente en Puerto Rico de dicha sociedad y que estaba autorizado para designarme como abogado de este caso con el fin de practicar la gestión de levantamiento del embargo antes referido; que esta Hon. Corte decretó el ˙levantamiento del embargo a moción del abogado que suscribe compareciendo a nombre de H. C. Christianson; que el azúcar embargada, por virtud de la gestión practicada en estos autos por el abogado que suscribe y de la fianza prestada, quedó libre del embargo y a la libre disposición de la sociedad demandada H. C. Christianson & Co., a quien se ordenó entregar los bienes embargados, los cuales fueron recibidos por Calvin Dietrich en representación de la sociedad H. C. Christianson y vendidos por aquél en beneficio de ésta, según la mejor información y creencia del exponente; que la sociedad H. C. Christianson & Co. fué informada por Calvin Dietrich de que se había prestado la fianza y de todos los procedimientos en el presente caso, así como de que existía pendiente una apelación a la Corte Suprema de la sentencia pronunciada contra dicha sociedad y que Calvin Dietrich había retenido y empleado al suscribiente como abogado para gestionar primeramente el levantamiento del embargo, y después la nulidad de la sentencia, constando este hecho al declarante por haberle mostrado Calvin Dietrich la correspondencia sostenida con H. C. Christianson & Co. Que en esta correspondencia H. C. Christianson & Co. manifestaba a Calvin Dietrich que la cuestión pendiente en los pleitos contra dicha sociedad como demandada y Arbona Hermanos y Aparicio Hermanos, números 4112 y 4113 de la Corte de Distrito de Ponce y Negrón y Hernández número 4498 de la Corte Municipal de Ponce eran asuntos de la incumbencia exclusiva de dicho Calvin Dietrich, haciendo a éste responsable del resultado y consecuencia de tales pleitos y del pago de todos los gastos que se originaran; que la carta que en copia se acompaña por la demandada de fecha 26 de noviembre de 1915, es respuesta a una carta del suscribiente a dicha mercantil, que en copia se acompaña y hace parte de este *affidavit;* que hasta entonces, es decir, hasta noviembre de 1915, cuando el firmante la requirió para el pago de sus servicios profesionales, nunca había la sociedad H. C. Christianson ni ninguno de sus socios repudiado ni desautorizado las gestiones legales del suscribiente, sino por el contrario se había aprovechado de tales gestiones y abstenido en absoluto, a pesar de conocerlas, de desaprobarlas; que el presente

*affidavit* lo formuló a petición del abogado Don José Tous Soto y con el fin de dejar a salvo mi buen nombre y·reputación profesional, puesta en tela de juicio por H. C. Christianson & Co. y su agente Calvin Dietrich, respetando no obstante el secreto profesional.

(Firmado)    "Frank Antonsanti,

"*Abogado.*

"San Juan, P. R., *marzo 13, 1916.*"

La parte apelada presentó moción a esta corte para que se desestimara el recurso de apelación.

La apelación ha de ser desestimada por la insuficiencia del récord. La transcripción de autos no contiene una copia de la sentencia que se trató de dejar sin efecto, ni ninguna otra parte del legajo de la sentencia, ni nada que justificara el derecho de la corte inferior para dictar sentencia, derecho que fué confirmado por este tribunal en la alegada apelación anterior. La presente moción para dejar sin efecto la sentencia hace referencia a una fianza prestada en la corte de distrito para asegurar la efectividad de la sentencia la cual fianza la apelante en su última moción ofreció sustituir por otra. Aparece de la moción y de los *affidavits* y particularmente del *affidavit* de Frank Antonsanti, que la aludida fianza fué prestada para levantar el embargo de bienes pertenecientes a la apelante que fueron embargados en el pleito original. La apelante sostuvo en su moción solicitando que se dejara sin efecto la sentencia que cualquier comparecencia hecha por algún abogado a su nombre, ya fuere general o especial, en cualquier moción incidental o procedimiento, era sin autoridad; y sin embargo, ninguno de estos procedimientos incidentales por virtud de los cuales se levantó el embargo de los bienes se hace parte de la transcripción de autos en apelación, siendo la teoría de la apelante que nadie tenía facultad para comparecer a nombre suyo en ningún procedimiento del pleito o incidental al mismo. Era importante saber por dicho procedimiento si los actos ejecutados por los abogados para obtener el levantamiento del embargo de los bienes fueron en realidad de verdad ratificados por la ape-

lante, y a ese fin era también importante saber la forma en que se llevó a cabo el levantamiento del embargo y a quien se entregaron los bienes. Si se levantó el embargo de los bienes, de la propiedad de la apelante, la deducción natural era que dichos bienes fueron devueltos a la referida apelante y que ésta tenía conocimiento de que sus bienes le fueron devueltos a virtud o por medio de ciertos procedimientos seguidos ante un tribunal por determinados abogados. Sea cual fuera la razón que hubo para hacer la comparecencia ante la corte inferior, todos los procedimientos tendrían que estar sometidos a este tribunal de manera que quede excluída cualquier teoría razonable por virtud de la cual la corte inferior se negó a dejar sin efecto su sentencia. Según parece, la apelante admite el hecho de ser incompletos los autos, pues sugiere y solicita de este tribunal que tome conocimiento judicial de los hechos sometidos a su consideración en la anterior apelación interpuesta en este caso.

Ahora bien, aunque puede ser cierto que las cortes de apelación pueden tomar y toman conocimiento judicial de sus autos en otros casos en el mismo caso y entre las mismas partes para algunos fines, estamos, sin embargo, convencidos de que según las autoridades los casos son raros y extraordinarios y generalmente se recurre a los autos para impedir que una parte tome ventaja de algo en los procedimientos que la corte sabe necesariamente que es de otro modo. En este procedimiento, por ejemplo, en que la apelada trata de promover nuevamente la cuestión de que la corte inferior pudo haber adquirido jurisdicción haciendo la notificación del emplazamiento a Dietrich, o mediante edictos, este tribunal tomará conocimiento judicial de que estas cuestiones fueron resueltas en contra de la apelada en la anterior apelación.

No creemos que será permitido por las cortes que una gran parte de los procedimientos de un caso sea traída a los autos mediante referencia a una apelación anterior entre las partes para servir a un fin positivo de un apelante. Se-

ría una práctica viciosa el que se permitiera a las partes elevar a este tribunal una fracción de los autos y sugerir luego que el resto puede suplirse con los autos de otras apelaciones a esta corte.   En las citas hechas por la apelante no hemos encontrado nada que indique una teoría contraria, a excepción quizás del caso de *Gardner* v. *Continental Ins. Co.*, 25 Ky. Law, 426, 75 S. W. 283.   La corte sostuvo en ese caso que al presentar un apelante los autos de un caso anterior como partes de los autos en apelación no habiendo presentado el apelado ninguna moción de eliminación, puede decirse que está impedido de poder demostrar que los hechos son distintos de como fueron conocidos por las cortes y las partes en la primera apelación.   Lo que sugiere la decisión es que la corte hubiera eliminado los autos mediante moción.   En el caso de *McNish* v. *State*, 36 So. 176, la corte consideró los autos para impedir a un apelante que alegara que el juicio en la apelación interpuesta entonces no era un segundo peligro (*jeopardy*), sino el segundo juicio que se celebraba al ser devuelto el caso.   Otras decisiones que han sido citadas muestran que la corte tomó conocimiento judicial de la ley del caso anterior como hemos hecho nosotros.   El efecto de algunas de las decisiones es el de que la corte de apelación no permitirá que las partes se basen en un estado de hechos que no podía haber sido alegado con éxito en la corte inferior.   Las cortes interpretarán también el efecto de las decisiones anteriores sobre las apelaciones pendientes de resolución.   La apelante también sugiere que la anterior apelación, *Aparicio Hnos.* v. *H. C. Christianson & Co.*, 23 D. P. R. 493, constituye la ley del caso.   En tanto los apelados insisten o levantan cuestiones que fueron resueltas en la anterior apelación, estamos de acuerdo con la apelante; pero si aquel caso fuera la ley del presente estaríamos obligados a confirmar la resolución apelada sin necesidad de otra cosa.   Es debido a que los hechos presentados a la corte de distrito y a que la teoría de la apelante son ahora distintos del caso anterior que éste no constituye la ley del caso para la ape-

lante, y por igual razón debió haberse sometido a esta corte
el récord como fué presentado en la corte inferior.

Puesto que se niega la autoridad de los abogados muy
bien podría suceder que fuera necesario hacer constar en
los autos la forma en que hicieron su comparecencia los abo-
gados en la Corte de Distrito de Ponce, lo que no se demostró
en la anterior apelación, antes de que este tribunal estuviera
satisfecho de que no debía haberse desestimado esta moción;
debió esta corte tener un certificado de la Corte de Distrito
de Ponce de que no había nada en los autos ante aquella corte
que pudiera ser de utilidad a esta corte en apelación.     En
realidad la apelación interpuesta en este caso es como un
caso nuevo.     La apelante ataca la sentencia fundada en una
razón que es enteramente distinta.     Las cuestiones presenta-
das son diferentes y requieren hechos diferentes o adicionales.

Aunque no se pidió a este tribunal, podríamos obtener
una certificación de todos los procedimientos habidos en este
caso en la corte inferior, pero no ejercitaremos nuestra fa-
cultad discrecional en este sentido, pues no estamos satisfe-
chos por los autos sometidos a la consideración de este tri-
bunal como han sido presentados con los *affidavits,* o por vir-
tud de ninguna de las ofertas que se hicieran respecto a los
hechos alegados en la otra apelación, como ha sugerido el
apelante en su alegato y de otro modo, o de cualquier hecho
de que tenga conocimiento la corte inferior, como ha sido
sugerido por la apelante, que el tener unos autos completos
pueda resultar en nada que no sea la confirmación de la re-
solución contra la cual se ha interpuesto esta apelación.     De
todas estas fuentes podríamos deducir los siguientes hechos
de los cuales una gran parte ha sido sugerida más bien que
incluída en los autos por el apelante.

Calvin Dietrich requirió al abogado Frank Antonsanti
para que compareciera en la Corte de Distrito de Ponce y
obtuviera el levantamiento del embargo trabado sobre cierto
azúcar de H. C. Christianson & Co., que había sido practicado
por los demandantes Aparicio Hermanos para asegurar la

efectividad de la sentencia que pudiera ser dictada. La corte aceptó la fianza suscrita por los dos fiadores, a saber, Segundo Cadierno y Manuel Gómez, pero no como se alega por H. C. Christianson & Co. y el azúcar quedó libre del embargo. En el *affidavit* presentado en este caso, Frank Antónsanti juró que los bienes fueron entregados a Calvin Dietrich y por éste vendidos por cuenta de H. C. Christianson & Co. Qué eran estos bienes y cómo vinieron a Puerto Rico, es cosa que no nos ha sido explicado satisfactoriamente. El *affidavit* de McNaughton expresa que Dietrich es sólo un agente comisionista a quien se envían mercancías para su entrega después de firmarse un contrato; y en el *affidavit* Dietrich jura que no recibe sueldo alguno de H. C. Christianson & Co., y que es remunerado por su trabajo, que es todo por comisión sobre azúcar que ha sido embarcada por dicha demandada para Puerto Rico mediante órdenes que han sido confirmadas y aceptadas por ella. Pero en este caso Dietrich viene a estar en posesión de mercancías que no consta que pertenezcan a ningún consignatario sino a la apelante misma. Fueron recibidas por Dietrich por virtud del levantamiento del embargo y vendidas por él por cuenta de H. C. Christianson & Co. Esto indica que las facultades de Dietrich eran más amplias que lo que parece indicar el *affidavit* de McNaughton. Fué la comparecencia de Antonsanti para levantar el embargo de los bienes lo que dió jurisdicción a la Corte de Distrito de Ponce para dictar sentencia contra la apelante.

Si se examina el *affidavit* de McNaughton se notará que considerado literalmente dice que aunque tiene conocimiento de todos los negocios de la firma, no tenía conocimiento de la comparecencia de Frank Antonsanti. Si esta manifestación hubiera de ser considerada literalmente, la corte inferior tenía derecho a hacer caso omiso y quizás si hizo caso omiso enteramente del *affidavit*. Tal manifestación está contradicha por el *affidavit* de Dietrich y de Antonsanti y especialmente por la correspondencia del caso. De darse al *affidavit* alguna consideración en absoluto tiene que limitarse al

hecho de que quiere decir que él no tenía conocimiento con-
temporáneo de la comparecencia de Antonsanti y no que no
sabía de ninguna de las cosas ejecutadas a nombre de H. C.
Christianson & Co. como de fecha algo más reciente que la
referida comparecencia hecha sin autorización.   Como unos
dos años antes de firmarse el *affidavit* por McNaughton fué
ocupada propiedad de H. C. Christianson & Co. en Puerto
Rico en procedimientos de embargo, levantado luego el em-
bargo y vendida dicha propiedad, y el producto obtenido se-
gún es de presumirse enviado a H. C. Christianson & Co.   Al
solicitar sus honorarios Frank Antonsanti a esta sociedad
contestó que se entendiera con Dietrich, pero no se ha negado
en forma adecuada que ella tuviera conocimiento de las di-
ligencias hechas por Dietrich para recobrar la posesión de
sus bienes que se encontraban embargados.   La demanda
tiene fecha de septiembre, 1914; el embargo se llevó a efecto
al mismo tiempo.   El levantamiento del embargo de los bie-
nes tuvo lugar en el otoño de 1914.   La primera moción soli-
citando se dejara sin efecto la sentencia fué desestimada en
mayo, 1915, y la correspondencia con Antonsanti es de noviem-
bre de ese año.   La situación en que se encuentra la apelante
es la de haber recibido los beneficios por la gestión de An-
tonsanti, haber tenido conocimiento de los actos ejecutados
a su nombre sin haber protestado jamás oportunamente, u
ofrecido restablecer las cosas (*status quo*) hasta el día de
la moción para dejar sin efecto la sentencia.   La Corte de
Distrito de Ponce tenía derecho a suponer en vista de los do-
cumentos que fueron sometidos a su consideración que la
firma H. C. Christianson & Co. aun cuando no hubiera tenido
conocimiento de la comparecencia original de Antonsanti
supo poco después que Dietrich empleó a Antonsanti para
levantar el embargo sobre los bienes de la apelante, y que
sin embargo nunca negó este acto sino que por el contrario
permitió que siguiera la apelación.   Este conocimiento y la
omisión por parte de la demandada en proceder constituyó
una ratificación de los actos de Antonsanti.

Antonsanti hizo su comparecencia en este caso. La pre-
sunción de la facultad que tenía no puede ser contradicha li-
geramente. Puede ser que la apelante jamás consintió cons-
cientemente o renunció nada, pero en vista de que el embargo
de los bienes había sido levantado y del *affidavit* de Anton-
santi al efecto de que tenía conocimiento del procedimiento,
la corte inferior estuvo justificada en creer que la presun-
ción de que tenía facultad Antonsanti no había sido contra-
dicha. La apelante estaba en el deber de demostrar a la corte
inferior que todo el procedimiento se llevó a cabo sin su co-
nocimiento en cualquier momento importante del mismo. La
corte inferior tenía derecho a inferir de su orden levan-
tando el embargo de los bienes pertenecientes a H. C. Chris-
tianson & Co. que éstos llegaron a su debido destino, o que
fueron puestos en poder de Dietrich y vendidos para bene-
ficio de H. C. Christianson & Co con conocimiento de esta
sociedad. No sólo es esto así, sino que Antonsanti se retiró
del primer caso precisamente cuando iba a discutirse la apela-
ción en este tribunal. En esa fecha Mr. Neagle, socio de la
firma Rounds, Hatch, Dillingham & Debevoise y Frank An-
tonsanti representaron mutuamente a Dietrich. En o para
esta ocasión Antonsanti recibió una carta de H. C. Christian-
son & Co. en la que le decía que acudiera a Dietrich por sus
honorarios, y a pesar de esto el Señor Neagle argumentó
el caso en este tribunal. Es posible, por supuesto, que Nea-
gle no tuviera conocimiento de la correspondencia habida
entre Antonsanti y H. C. Christianson & Co., pero en este
caso Neagle no ha presentado ningún *affidavit,* y creemos
que la Corte de Distrito de Ponce tenía derecho a suponer
que Neagle actuaba con facultades. Debido a la conducta
de Dietrich en algún momento anterior, H. C. Christianson
& Co. pudo haber creído que él y no dicha sociedad debía ser
responsable por los honorarios en un procedimiento que le
obligaba con motivo de algún acto de Dietrich, pero dicha so-
ciedad no hizo oposición al procedimiento que se seguía a
su nombre. Antonsanti jura por información y creencia que

la apelante fué informada por Calvin Dietrich de la pres-
tación de la fianza y de todos los procedimientos del caso,
así como de la apelación interpuesta para ante este tribunal;
y jura además, que H. C. Christianson & Co. insistía en que
los casos pendientes en la Corte de Distrito de Ponce, inclu-
yendo el presente, eran asuntos de la exclusiva incumbencia
de Calvin Dietrich. Aunque McNaughton y Dietrich juran
que H. C. Christianson & Co. no dieron facultad a nadie para
representar a la sociedad, la corte inferior, sin embargo, te-
nía derecho a creer que aun cuando no se hubiera dado una
autorización directa la apelante había consentido el proce-
dimiento y no tenía inconveniente en dejar actuar a Dietrich
a fin de salvar lo que pudiera, por su propio interés y usando
su nombre. La apelación estuvo pendiente por más de un
año y no se negó la autoridad de Antonsanti primero y de
Neagle después para representar a la apelante.

Ha de ser muy claro el caso para que pueda quedar anu-
lada la facultad de los abogados para representar a sus clien-
tes. Esta presunción descansa sobre la base del procedimiento
de nuestra corte, pues de otro modo a cada paso tendría la
corte que detenerse e interrogar a los abogados. No sola-
mente aparece de los autos que H. C. Christianson & Co. es-
tuvieron conformes con la conducta de los abogados que die-
ron a entender que la representaban, sino que después auto-
rizaron a la firma Rounds, Hatch, Dillingham & Debevoise
para representarla en el procedimiento seguido para dejar
sin efecto la sentencia, que era la misma firma que por con-
ducto de Neagle la había representado a solicitud de Dietrich.
Existe unanimidad en la acción o dirección en el empleo de
abogados lo que hace suponer de antemano que había una
sola dirección, si no por parte de H. C. Christianson & Co., en-
tonces en Dietrich, cuyos abogados ahora emplea dicha firma.
Hemos dicho que la presunción de que un abogado está auto-
rizado para representar a una persona no puede ser negada
fácilmente y sus actos son susceptibles de fácil ratificación.
Es un principio en favor no sólo de Antonsanti sino de Nea-

gle, de la firma Rounds, Hatch, Dillingham & Debevoise y de
todo el foro.   El *affidavit* de H. C. Christianson & Co. expre-
saba que nadie tenía derecho a representarla excepto Rounds,
Hatch, Dillingham & Debevoise, y la apelada en la corte in-
ferior puso prontamente en tela de juicio el derecho del abo-
gado residente en la ciudad, Sr. Martínez Nadal, que no es
socio de la firma Rounds, Hatch, Dillingham & Debevoise,
para representar a la apelante.   No sólo ocurrió esto, sino
que Rounds, Hatch, Dillingham & Debevoise se excedieron
al parecer en sus facultades al ofrecer prestar una fianza y
estar y pasar por la sentencia que fuera dictada.   El *affida-
vit* de McNaughton expresa que esta sociedad de abogados
solamente tenía facultad para solicitar que se dejara sin efecto
la sentencia.   La oferta de prestar una nueva fianza podría
por tanto ser ilusoria.   Podríamos tener dudas hasta de la
misma apelación que ha sido interpuesta en este caso.   Las
facultades de Rounds, Hatch, Dillingham & Debevoise tal
como aparecen del *affidavit* de McNaughton se limitan téc-
nicamente a la presentación de mociones ante la corte infe-
rior.   Estos son algunos de los inconvenientes que podrían
surgir si no insistiéramos en una regla de interpretación que
sea más bien rigurosa, cuando se duda de las facultades de
un abogado.   El derecho de acción contra los abogados que
comparecían indebidamente ante una corte era originalmente
el único remedio que tenía el cliente.   La práctica más mo-
derna ha conferido a los clientes el derecho a comparecer
mediante moción, como se hizo en este caso, pero en dicha
moción deberá negarse prácticamente toda duda respecto a
la facultad del abogado; de lo contrario los clientes sólo pue-
den recurrir al abogado o agente que hizo la comparecencia
sin estar autorizado para ello.

Hemos considerado principalmente este caso desde el as-
pecto de la ley común.   Los artículos 1789, 1790, 1791, 1793
y 1794, del Código Civil prescriben lo siguiente:

"Art. 1789.—El que se encarga voluntariamente de la agencia
o administración de los negocios de otro, sin mandato de éste, está

obligado a continuar su gestión hasta el término del asunto y sus incidencias o a requerir al interesado para que lo sustituya en la gestión, si se hallase en estado de poder hacerlo por sí.

"Art. 1790.—El gestor oficioso debe desempeñar su encargo con toda la diligencia de un buen padre de familia e indemnizar los perjuicios que por su culpa o negligencia se irroguen al dueño de los bienes o negocios que gestione.

"Los tribunales, sin embargo, podrán moderar la importancia de la indemnización según las circunstancias dél caso.

"Art. 1791.—Si el gestor delegare en otra persona todos o algunos de los deberes de su cargo, responderá de los actos del delegado, sin perjuicio de la obligación directa de éste para con el propietario del negocio.

"La responsabilidad de los gestores, cuando fueren dos o más, será solidaria."

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

"Art. 1793.—La ratificación de la gestión por parte del dueño del negocio produce los efectos del mandato expreso.

"Art. 1794.—Aunque no hubiese ratificado expresamente la gestión ajena, el dueño de bienes o negocios que aproveche las ventajas de la misma será responsable de las obligaciones contraídas en su interés, e indemnizará al gestor los gastos necesarios y útiles que hubiese hecho y los perjuicios que hubiese sufrido en el desempeño de su cargo.

"La misma obligación lo incumbirá cuando la gestión hubiera tenido por objeto evitar algún perjuicio inminente y manifiesto, aunque de ella no resultare provecho alguno."

Asimismo los artículos 153 y 255 del Código de Comercio prescriben lo siguiente:

"Art. 253.—Celebrado un contrato por el comisionista con las formalidades de derecho, el comitente deberá aceptar todas las consecuencias de la comisión, salvo el derecho de repetir contra el comisionista por faltas u omisiones cometidas al cumplirla."

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

"Art. 255.—En lo no previsto y prescrito expresamente por el comitente, deberá el comisionista consultarle, siempre que lo permita la naturaleza del negocio.

"Mas si estuviese autorizado para obrar a su arbitrio o no fuere posible la consulta, hará lo que dicte la prudencia y sea más conforme al uso del comercio, cuidando del negocio como propio. En el caso

de que un accidente no previsto hiciere, a juicio del comisionista, arriesgada o perjudicial la ejecución de las instrucciones recibidas, podrá suspender el cumplimiento de la comisión, comunicando al comitente, por el medio más rápido posible, las causas que hayan motivado su conducta.''

Estos artículos comprenden muy bien la ley de este caso.

Si leyéramos entre líneas diríamos que toda la pérdida la sufriría eventualmente el agente Dietrich que en este caso procedió precisamente como si fuera la firma H. C. Christianson & Co. y con cierta apariencia de justificación por virtud del Código Civil y de Comercio. Cuando un agente sin facultades procede como procedió Dietrich en este caso, sus actos pueden fácilmente ser objeto de ratificación, y dicha ratificación tuvo lugar cualesquiera que hayan sido las relaciones particulares entre Dietrich y H. C. Christianson & Co. Para nosotros es evidente que Dietrich pudo haber obtenido antes la misma facultad que finalmente le fué conferida, o mejor dicho, a sus abogados Rounds, Hatch, Dillingham & Debevoise para defender a H. C. Christianson & Co. En vez Dietrich y sus abogados de hacer venir a la apelante a defenderse del pleito del apelado en sus méritos, procuraron valerse, o su principal, de cualesquiera defensas técnicas que pudieran existir y principalmente de la relativa a la omisión en hacerse la notificación personal del emplazamiento a la apelante que se encontraba haciendo negocios con varias firmas en Puerto Rico. Ahora la apelante quiere hacer lo que debió haber hecho después de embargados los bienes, o sea, solicitar de la corte que le concediera una oportunidad para formular sus alegaciones. Estamos sostenidos en cierto modo en esta idea de que estos procedimientos desde su principio hasta el fin estuvieron bajo la dirección de Dietrich por el hecho de que si la fianza hubiera sido prestada sin tener facultades para ello no podría afectar a la apelante que nunca la suscribió, sino solamente a los fiadores para con quienes desde luego era responsable Dietrich.

Hemos discutido este caso en forma algo extensa con ob-

jeto de demostrar que la apelante no ha alegado ninguna razón por la que debamos ejercitar nuestra discreción permitiendo hacer la enmienda de los autos.

En el juicio la apelante hizo una moción para que se le permitiera presentar un señalamiento de error adicional la cual concederemos.

La apelación debe ser desestimada.

*Desestimada la apelación.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.